THE PEOPLE OF THE STATE OF NEW YORK, Respondent-Appellant, *v.* ROBERT E. HENNING, Appellant-Respondent, and WESTCHESTER GROUP, INC., Appellant.

Second Department, July 23, 1973.

*Robinson, Silverman, Pearce, Aronsohn, Sand & Berman* (*Leonard B. Sand, Raymond S. Hack* and *Zvi Wilamowsky* of counsel), for appellant-respondent and appellant.

*Carl A. Vergari, District Attorney* (*B. Anthony Morosco, James M. Rose* and *Jon N. Willcox* of counsel), for respondent-appellant.

SHAPIRO, J. The defendants, Robert E. Henning and Westchester Group, Inc. (Group), were convicted of various crimes following a trial of unusual complexity. The complexity resulted, in part, from a 148-count indictment comprising 298 pages, and from a jury charge totaling 218 pages, of the defendants-appellants' appendix.

### THE BASIS FOR THE INDICTMENT

Defendant Henning was the general partner in six limited partnerships which commenced operation between 1960 and

1967. These partnerships were known as Westchester Group Parkway Road Limited Partnership (Parkway Road), organized in 1967; Westchester Group Assembly Limited Partnership (Assembly), organized in 1960; Westchester Group Organization Limited Partnership (Organization), organized in 1961; Westchester Group Bronxville Limited Partnership (Bronxville), organized in 1962; Westchester Group Coordinates Limited Partnership (Coordinates), organized in 1960; and Westchester Group Rye Limited Partnership (Rye), organized in 1965.

Each of the limited partnerships held title to one rent-controlled building in lower Westchester County. Various persons invested, as limited partners, in the expectation of receiving annual dividends, a tax loss because of depreciation and a capital gain upon the eventual sale of the underlying asset. Moneys were funneled into and out of the various partnerships through Group, a close corporation controlled by Henning.

The primary basis of the indictment is the fact that after the original units in the partnerships had been fully sold, Henning sold additional nonexistent units to various persons, some of whom were original investors in the partnerships. Some of the moneys derived from these additional investors was used to pay retiring partners. Other of such moneys was not so used. Much of the testimony adduced from the expert witnesses was directed to a determination of whether the sale of additional interests resulted in a dilution of the interests of the original investors. *However, no count of the indictment charged such a dilution and the jury was instructed that the issue of dilution was not in the case.* The proof indicated that the capitalization of the six limited partnerships had increased by about $250,000 as the result of sales of additional shares to investors. The six buildings were sold for $830,000 over and above existing mortgages. The total original capitalization of the buildings was about $835,000. When Henning was ousted as the general partner, there was about $100,000 in outstanding indebtedness. The total capital loss of the investors was therefore in the neighborhood of $350,000. Each person who purchased an additional share was paid dividends on that share in the same manner as were original investors and received a proportionate share of the moneys received upon the ultimate sale of the properties by the successor management.

The indictment contains counts under both the former and the present Penal Law, as the acts charged occurred both before and after September 1, 1967, the effective date of the new law,

and many of the counts would be time-barred save for the allegation that the facts could not have been discovered in the exercise of due diligence prior to a stated date.

Under the provisions of the former Penal Law, a larceny charge had to specify the means by which the larceny had been perpetrated. This requirement has not been carried forward into the new law. The counts submitted to the jury fall into several categories. These are larceny involving the sale of additional shares after 1967 (the basic larceny theory being that the purchaser of an additional share received nothing of value); larceny by false pretenses committed prior to 1967 (the allegedly false representation being made to the additional investor that he was replacing an original investor); larceny committed in the diversion of partnership funds to Henning's personal use; and the making of a false statement as to securities (the allegedly false statement again being that additional investors were replacing original investors). The jury convicted the defendants on all but eight of the counts submitted to it.

On the basis of the Statute of Limitations, the court, during the trial, among other counts, dismissed 10 counts charging fraud in the affairs of a limited partnership; six counts charging engaging in a fraudulent and deceptive artifice, in violation of sections 352-c and 359-g of the General Business Law; six counts of selling real estate securities without having filed a prospectus, in violation of sections 352-e (subd. 1) and 359-g of the General Business Law; six counts of failing to file an annual report of real estate syndication, in violation of sections 352-e (subd. 8) and 359-g of the General Business Law; and six counts of withdrawing moneys held in trust in connection with a public offering of securities, in violation of sections 352-h and 359-g of the General Business Law. The court also dismissed the counts charging larceny from Rye committed prior to September 1, 1967.

Some of the counts of the indictment contained charges against both Henning and Group, and others contained charges only against Henning. As shall be seen, the counts which we are holding insufficient as to Henning are also insufficient as to Group.

### THE TESTIMONY

Irving Friedlander, a certified public accountant, had performed bookkeeping services for the six limited partnerships for about seven years and had invested with Henning. He had told Henning that the buildings were showing a loss and that

he should not pay dividends. Henning replied that he had promised his investors 8% or 9% and that is what he was giving them. In Friedlander's opinion, most of the dividends were not warranted, as there were no profits. Each year he received a list from Henning of new and retiring investors. However, he never knew what the total capitalization was as to any particular limited partnership. No financial statements were sent to investors. They merely received a yearly statement as to the profit or loss on their own investments for tax purposes.

Robert Cofini, a public accountant who specializes in investigative accounting, examined those books and records of the six limited partnerships which had been submitted to the District Attorney's office. He testified to the increases in the capital structure of each of the limited partnerships, loans made to Henning from the partnerships and payments by the partnerships of loans made to Henning by the County Trust Company. Cofini was of the view that the partnerships were paying off Henning's personal loans, as their books did not reflect receipt of the proceeds of the loans. Cofini also testified that the partnerships had not received income sufficient to justify the payment of dividends. He said it was improper to pay dividends before deduction of depreciation, but conceded that this practice did not violate the partnership agreement. He also testified that there were substantial sums of money invested which were unaccounted for. He admitted that investors had been paid dividends based upon their monetary investment in a particular partnership, whether they were original or additional investors, and that their additional investments were treated as capital contributions. He arrived at his figure of unaccounted for funds as follows: " To arrive at my figure of unaccounted for funds, I first examined naturally, all the books of original entry and determined what the investment of each investor was or what it should have been, based upon the amount of dividend that had been paid to that particular investor. I then compared my findings or my conclusions at the end of each year with the work papers of Irving Friedlander. I then attempted to trace the actual cash that had been invested by each one of these investors into the limited partnership involved. I also went through each limited partnership to determine whether or not there was a possibility that the funds contributed by a particular investor, instead of arriving at a limited partnership in which he had an investment or had invested his monies, whether it was possible they might have been deposited into the account, the bank account of one of the other limited partnerships and also

to see whether or not it had been deposited into the account of Westchester Group Inc. and if it had been deposited into the account of Westchester Group Inc., did it ever leave the account of Westchester Group, Inc. and subsequently get deposited into that particular partnership and in cases where, of course, I have my unaccounted for funds, they are the result of this tracing and the fact that I could not trace the funds which I listed as unaccounted for." It should be noted that this method does not appear to take into account the payment of retiring partners by Group from funds deposited to its accounts by new investors.

Cofini testified that "oversubscriptions" created a dilution by reducing the percentage interest of original investors. When various partnerships were short of cash with which to pay dividends, they borrowed money from other partnerships and used moneys received as additional investments. Cofini was also of the opinion that certain mortgage refinancings had as their objective the raising of additional funds from which dividends could be paid.

In addition to testifying in his own defense, Henning called a number of witnesses. In view of the conclusion at which I have arrived as to the proof adduced by the People, it would unnecessarily extend this opinion to fully set forth their testimony. Suffice it to say that Henning testified that when he found a suitable building he would go to the County Trust Company, explain that the building was to be purchased in the name of Group and that the building would thereafter be conveyed to a limited partnership; that the bank would then lend him the money *in his own name* for the down payment and contract expenses; that when moneys were collected from the original investors the closing would be held, Group presenting a certified check, with title being taken in the name of the appropriate limited partnership; and that Group was used as a conduit, never retaining any assets itself. In addition, except for admitting obtaining "oversubscription" of limited partnership units, although denying that he had made any misrepresentations with regard thereto, Henning specifically, and in detail, not only denied, but refuted, the allegations in the indictment.

The vice-president of the County Trust Company testified that his company made two types of loans to Henning for business purposes, short-term commercial loans and installment loans, *that the proceeds of these loans, although payable personally to Henning, were for the benefit of the partnerships and that*

*after Henning retired as the general partner his successors
continued to make payments on the installment loans.*

The certified public accountant called by the defense con-
structed a statement of source and application of funds which
disclosed a full accountability of all moneys received and dis-
bursed from the inception of the partnerships through the end
of 1968 and he gave it as his opinion, contrary to that expressed
by Cofini, the People's accountant, that dividends could properly
be distributed before depreciation was taken. He also stated
that there was an oversubscription in terms of units but not in
terms of economic substance, since consideration was received
by the partnerships for the additional shares.

### THE APPLICABLE LAW AND THE COURT'S CHARGE

The jury was instructed that under the Partnership Law new
limited partners could be taken in or substituted for original
partners only by a written amendment of the partnership
certificate, signed by all partners and filed, and that without
such consent or a subsequent ratification the general partner
had no authority to admit a person as a limited partner, unless
the right to do so was given in the partnership certificate. The
jury was then told that the failure to comply with the Partner-
ship Law did not itself constitute a crime. The Trial Judge went
on to instruct the jurors that the partnership agreements did
not authorize Henning, as the general partner, to admit new
limited partners and that without written amendment "such
attempted sale is ineffective and transfers nothing of value to
the purchaser."

As noted, the defendants were convicted of various groups of
counts. The first of these involves charges of grand larceny
committed after the effective date of the present Penal Law.
These are counts 10, 11, 28, 29, 36, 44, 48, 62 and 63, charging
grand larceny in the second degree, and counts 45, 71 and 79,
charging grand larceny in the third degree. Each of these
counts alleges that grand larceny was committed in that the
defendants, pursuant to a common scheme and plan, stole money
from named individuals.

The theory of the prosecution, in this connection, was that
bogus shares had been sold and that the additional investors
received nothing of value for their money. On that issue, i.e.,
whether they had received anything of value, the court's charge
was virtually a directed verdict for the prosecution.

Unquestionably, the sale of additional shares diluted the value
of the investments of *the original investors,* because such

additional investments lessened their percentage interest in the property owned by the partnership, thereby reducing the amount which they would receive upon an ultimate sale, but there is no charge of *dilution* in any count of the indictment. Indeed, on this score, the prosecution's theory was inconsistent. If the new purchasers received only bogus shares of no value, there was no dilution. A dilution would eventuate only if the new investors received something of value, i.e., an interest in the partnership to the extent of their investment. The prosecution, in its proof, nevertheless went to great lengths to demonstrate a dilution and if this proof did nothing more it served to becloud the true issues for determination by the jury.

Paragraph (f) of subdivision (1) of section 98 of the Partnership Law provides that without written consent or ratification by all the limited partners, a general partner may not admit new limited partners, unless the right to do so is given in the certificate. Clause XI of paragraph (a) of subdivision (1) of section 91 of the Partnership Law provides that the partnership certificate may confer such a right. Section 97 provides that additional limited partners may be admitted upon the filing of an amendment to the partnership certificate, but, as the Trial Judge properly noted in his instructions to the jury, the defendants were not being prosecuted for violation of the Partnership Law, but for grand larceny.

It is undisputed that the additional investors received dividends to the same extent and in the same manner as original investors. They received a fractional interest upon the ultimate sale of the underlying asset. There is no proof that any original or additional investor (all of whom by then had knowledge of what Henning had done) objected to such treatment. Clearly then, there was a ratification of the sales of additional interests. Even, however, if it be held that there was no formal ratification, there can be no larceny, as the additional investors in fact received precisely what they bargained for, an interest in the partnership in the proportion that their investment bore to the total investment. Therefore, these and the other counts of the indictment which charge larceny by the defendants from named individual additional investors must be dismissed.

The next series of counts involves charges of grand larceny committed prior to the effective date of the present Penal Law. The counts here involved are: 9, 19, 33, 47, 61, 89, 91, 25, 55, 27, 31, 85, 87, 13, 15, 17, 23, 43, 53, 95, 101, 103 and 69. In substance, each of these counts alleges that the defendants stole property by means of false and fraudulent representations to

named persons that additional investment funds were needed to purchase existing limited partnership shares and that such representations were known to be false by the defendants and were relied upon by the named investors.

Each of these counts must be dismissed, for the reasons discussed above. There was no larceny because in fact the investors received what they bargained for. It should be noted, in addition, that as to many of these counts the People failed to establish that the claimed representation was in fact made or that, if made, was relied upon by the named complainant. In order to sustain a conviction on a theory of larceny by false pretenses, the People must demonstrate reliance on the pretense (*People* v. *Baker,* 96 N. Y. 340; *People* v. *Trotta,* 30 A D 2d 562, 563).

The next series of counts involves larcenies committed by Henning against various of the partnerships. Count 114 involves a grand larceny committed against Assembly after the effective date of the new Penal Law, September 1, 1967. It does not specify the manner in which the larceny was committed. Counts 115, 116, 117 and 118 involve larcenies committed against Assembly, Coordinates, Organization and Rye prior to that date. These latter counts allege that the theft was accomplished by Henning diverting partnership funds to his own use.

Henning's convictions on these counts should also be reversed and a new trial as to them should be had. The charge to the jury as to these counts was so erroneous and confusing that it must have been well nigh impossible for the jury to understand exactly what acts constituted the gravamen of these offenses. The jury was charged that the acts which could, if proved, result in a finding that partnership funds had been diverted for Henning's own use were (1) the use of partnership funds to pay off Henning's personal loans from the County Trust Company, (2) the use of funds invested by additional investors to pay dividends and (3) the fact of unaccounted for moneys.

As to the first and third of the above items, the proof was close. However, the second ground given the jury as a possible basis for a finding of guilt was improper. The counts in question alleged, in effect, a diversion of partnership funds for the defendant Henning's own use. If additional investments were used to pay dividends to original and additional investors, these funds were used (albeit improperly, from an accounting point of view) for partnership purposes and did not constitute a larceny by Henning from the partnerships. This error is so fundamental that it deprived Henning of a fair trial and a reversal of the conviction as to these five counts is mandated,

even though no objection was taken (see CPL 470.15, subd. 6, par. [a]), because it is impossible to ascertain the theory utilized by the jury in finding him guilty of these charges.

The error with regard to these counts was compounded by the fact that the only counts involving larcenies from partnerships submitted to the jury involved Assembly, Coordinates, Organization and Rye. Nevertheless, the trial court instructed the jurors for five pages with regard to Bronxville and told them that Cofini was unable to account for $64,716.66 of this partnership's funds. Further, that portion of the charge which detailed Cofini's testimony as to unaccounted for funds covers some 35 pages, but in reviewing Henning's testimony in this regard the trial court merely stated that Henning had sought to account for the funds, that his testimony had been detailed and that the jury could have it read back if it were so inclined. Henning's conviction as to counts 114, 115, 116, 117 and 118 should therefore be reversed and a new trial ordered as to them.

The final series of counts involves violations of section 952 of the former Penal Law. These counts allege that Henning, with intent to deceive, told named investors that additional investment funds were needed to purchase the interests of retiring original partners, that such representations were untrue and that the named investors acted in reliance upon these representations. Section 952, which is headed "False statement or advertisement as to securities", requires that the statement be made with intent to deceive, but contains no requirement of reliance, and the jury therefore was properly charged that reliance was not an element of this crime even though the counts of the indictment themselves alleged reliance upon representations made by Henning to the named investors.* However, unlike the situation with regard to the larceny counts, the investors were powerless to ratify Henning's conduct. The crime in question was completed upon the making of the false statements with intent to deceive.

---

* Section 952 of the former Penal Law reads as follows: "Any person, who, with intent to deceive, makes, issues or publishes, or causes to be made, issued or published, any statement or advertisement as to the value or as to facts affecting the value of the stocks, bonds or other evidences of debt of a corporation, company or association, or as to the financial condition or facts affecting the financial condition of any corporation, company or association which has issued, is issuing or is about to issue stocks, bonds or other evidences of debt, and who knows, or has reasonable ground to believe that any material representation, prediction or promise made in such statement or advertisement is false, is guilty of a felony, punishable by a fine of not more than five thousand dollars, or by imprisonment for not more than three years, or by both."

The counts here involved are 8, 12, 18, 32, 60, 88, 90, 24, 14, 22, 26, 46, 52, 54, 94, 68, 86, 100 and 102. The only counts in this series which may be sustained are those in which there was clear proof of a representation. On the basis of the testimony adduced, the jury could find that Henning's testimony as to the use to which particular moneys had been put was untrue. Those counts in which no false representation was proved must fall. The counts as to which the evidence did not establish that representations were in fact made are 12, 14, 22, 46, 52, 54, 60, 68, 94, 100 and 102. The counts sustainable are 8, 18, 24, 26, 32, 86, 88 and 90.

As to those counts which are otherwise sustainable, a new trial must nonetheless be had, for the jury must have been prejudiced in its consideration of the facts in the case, since counts in which no representations were proved were submitted along with counts in which representations were proved. Further, the burden upon the jury to determine whether named additional investors had or had not replaced original investors was, on this record, intolerable. The duration of the trial, the length of the indictment, the number of counts and the failure of the trial court to weed out insufficient counts require that, in the interests of justice, a new trial be had as to the above-mentioned sustainable counts.

Paragraph (b) of subdivision 6 of CPL 300.40 permits the court, when dealing with a complex or massive indictment, to submit representative counts to the jury. The trial court should have utilized this discretionary tool to ease the enormous task facing the jurors.

The defendants argue that, in any event and without regard to their contentions on the merits, this prosecution must fail, because it is barred by the one-year Statute of Limitations. This contention is rejected. Prosecution was commenced while the Code of Criminal Procedure was in effect. Subdivision 2 of section 142 thereof provided that prosecutions for larceny as a felony were to be commenced within five years of discovery, in the exercise of reasonable diligence, of the facts constituting the crime. Paragraph (a) of subdivision 3 of CPL 30.10 has reduced this time period to one year. The prosecution was timely when commenced. Subdivision 3 of CPL 1.10 provides that the provisions of that law "do not impair or render ineffectual any proceedings or procedural matters which occurred prior to the effective date thereof." This saving provision renders the proceeding valid.

The People have cross-appealed from the imposition of consecutive intermittent sentences on various larceny counts. As we are reversing the conviction as to those counts and dismissing all of those counts, the cross appeal is rendered academic and should be dismissed.

The judgment should be reversed, on the law and the facts and as a matter of discretion in the interest of justice, a new trial ordered as to counts 8, 18, 24, 26, 32, 86, 88, 90, 114, 115, 116, 117 and 118, and the remaining counts dismissed.

HOPKINS, Acting P. J., MARTUSCELLO, CHRIST and BRENNAN, JJ., concur.

Judgments reversed, on the law and the facts and as a matter of discretion in the interest of justice; the following counts of the indictment are dismissed: 10, 11, 28, 29, 36, 44, 48, 62, 63, 45, 71, 79, 9, 19, 33, 47, 61, 89, 91, 25, 55, 27, 31, 85, 87, 13, 15, 17, 23, 43, 53, 95, 101, 103, 69, 12, 14, 22, 46, 52, 54, 60, 68, 94, 100 and 102; and a new trial is ordered upon the following counts: 8, 18, 24, 26, 32, 86, 88, 90, 114, 115, 116, 117 and 118.

Cross appeals dismissed.