OPINION OF THE COURT
Joseph J aspan, J.
Arthur Rosenstein, a practicing attorney, and his sister, Sondra Rose, are charged with acting in aid of each other in the unlawful placement of a newborn infant and acceptance of a fee therefor in violation of subdivisions 2 and 6 of section 374 of the Social Services Law, class A misdemeanors. The defendants are also charged with a single count of grand larceny in the second degree, a felony.
The defendants do not challenge the sufficiency of the evidence presented to the Grand Jury with respect to the Social Services Law counts, but do ask for an inspection of the minutes with respect to and a dismissal of the grand larceny charge.
This count charging grand larceny by false pretenses alleges in substance that the defendants "with intent to defraud” represented themselves "as being authorized by the law of the State of New York to place out a child for adoption in this state” and in reliance thereon a named party (a pediatrician living in the State of New Jersey) paid the sum of $5,000 to the defendants and that in fact the representation was known by the defendants to be and was false.
While this larceny charge is also grounded upon the violations of the Social Services Law, it is not duplicative of these charges. Where the defendants in the process of concluding an improper transfer of a newborn also obtain money by false pretenses, they may also be prosecuted for grand larcney. (Penal Law, § 155.05, subd 2, par [a].)
To establish this crime, the People must prove: "(1) [Tjhere was a criminal intent to deprive and defraud the owner of property, (2) the defendant made a false representation of a past or existing fact, (3) the defendant knew the representation was false at the time he made it, (4) the defendant obtained property of another, (5) the representation was believed and relied upon by the person to whom made and that person was in whole or in part induced thereby to give his
*1071 property to the defendant. (People v. Lehrer, 182 Misc. 645; People v. Levitas, 40 Misc 2d 331; People v. Lobell, 298 N. Y. 243; People v. Hubbard, 10 A D 2d 735.)” (People v Kirk, 62 Misc 2d 1078, 1082.)
The defendant Rosenstein by the words and conduct attributed to him and his codefendant did make false representations as to a material fact.
On page 10 of the Grand Jury minutes, there is the following testimony:
"Q Did you ever question Mr. Rosenstein in your negotiations with him, especially about the second baby, as to the legality of private individual arranging for adoption?
"A Yes, I asked him if everything was kosher, if everything was on the up and up and things would be okay and he assured me that, several times that he’s had these dealings in the past and everything would be okay.
"Q Did you rely on his representation to you that everything was, to use your language, kosher or on the up and up?
"A Yes.
"Q Based on Mr. Rosenstein’s representations to you, did you pay him any money for this second baby which you were going to adopt?
"A Yes.
"Q Can you tell us please what you paid him, how you paid him and where you paid him?
"A The baby was born on July 31st.
"Q That’s 1976?
"A 1976; on August 3rd we met Mrs. Rose in the office in Mr. Rosenstein’s office.
"Q Would that be in Suffolk County, State of New York?
"A Correct, and we gave her a money order for five thousand dollars.”
It has been held that larceny by false pretenses need not be based on oral statement, but may be based upon conduct. (People v Hochberg, 87 Misc 2d 1024, citing People v Bollettieri, 9 NY2d 629, cert den 366 US 950.)
The conduct in this case is even more forceful than the articulated representations set forth above.
After unsuccessful efforts to adopt a baby through well-known adoption agencies, the prospective parents were recommended to the defendant by a clergyman. The parties met in *1072 June, 1976 at which time the adoption of a baby scheduled to be born in Connecticut was discussed. Provision was made for payment in the range of $10,000 to include full adoption services.
It was later determined that the mother had given birth to a stillborn child and the arrangement then centered about a child due to be born in New York in July. The fee agreed upon was $5,000 plus hospital, doctor and medical expenses. The fee was not claimed or represented to be for legal services.
The baby was delivered, given into the custody of the payors, transported to New Jersey by them and adopted.
The theme which permeates the dealings between the parties is an effort to provide a child who would become a loved member of the acquiring family. Delivery of the baby was not the end product of the transaction. Of necessity, it had to be legal and unassailable. They had a right to believe that the love and affection they would shower on the infant and the strength of their attachment to it would not be strained or broken by an attack on their right to adopt or their right to retain. They were dealing with a professional purportedly skilled in the area and it is on this reputation, confirmed by self-pronouncement, which could lead nonlawyers from another State to believe that they were engaging in a legal transaction.
Their inquiry as to the legal validity of the placement cannot be considered as an idle inquiry. Their concern was that their status as loving parents would not be jeopardized or destroyed by some legal constraint. They had a right to that assurance before they accepted the baby and incidentally before they paid the fee. There is no indication in the minutes that the moneys would have been paid for a contingent or speculative right to retain custody and adopt. The pediatrician and his wife parted with funds in reliance upon the implied and expressed representations of the defendant Rosenstein.
Such a representation as to the law of this State can be a representation of a past or existing fact where made by a party who has superior knowledge or means of knowledge not available to the others. Under these circumstances, the attorney had a legal obligation to speak and even silence would have constituted fraud (Matter of State of New York v ITM Inc., 52 Misc 2d 39). A suppression of the truth under these circumstances may amount to a suggestion of falsehood if *1073 done with the intent to deceive. (Noved Realty Corp. v A.A.P. Co., 250 App Div 1.)
Not only did the defendant jeopardize the right of the prospective parents to a legal transfer, but also withheld information about their potential criminal involvement by reason of the provisions of article IV of the Interstate Compact On the Placement of Children (Social Services Law, § 374-a, subd 1) which reads as follows: "The sending, bringing, or causing to be sent or brought into any receiving state of a child in violation of the terms of this compact shall constitute a violation of the laws respecting the placement of children of both the state in which the sending agency is located or from which it sends or brings the child and of the receiving state.”
It cannot be assumed that the doctor was ready to run this risk to his professional career or to his right to adopt.
In Matter of Anonymous (46 Misc 2d 928), a petition for adoption was denied on the ground that the child was not properly "placed out” in accordance with the requirements of section 371 of the Social Services Law. There, an attorney had placed the child with the prospective adoptive parents, similarly to the case at bar. The adoption was denied on the ground that the attorney was not an "authorized agency” (Social Services Law, § 371). The court noted (p 930): "The statute establishes guidelines, which are mandatory, so as not to risk the future security of the child and the happiness of the adoptive parents and the natural mother.”
The danger that such a rule would be applied in New Jersey which joined in the Interstate Compact cannot be excluded.
It could be argued that there was no reliance upon the false statements since the prospective adoptive parents received what they bargained for. (People v Henning, 42 AD2d 286.) But as noted above, the bargain was for a baby legally delivered and suitable for adoption. That was not necessarily the fact at the time of the transfer and payment. The fortuitous circumstance that a New Jersey court approved the adoption does not change the character of the transaction or excuse the false representations. There is no information presented at this time to show that the court was familiar with all of the circumstances of this case.
The defendant Sondra Rose intentionally aided her brother, Arthur Rosenstein, in a meaningful way in the negotiations and ultimate consummation of the transaction.
*1074 An examination of the Grand Jury minutes leads to the conclusion that the facts there presented, if uncontradicted or unexplained, establish that the defendants committed the crime of grand larceny in the second degree. (People v Potwora, 44 AD2d 207.)
The indicated retreat by the physician from the words and substance referred to in the Grand Jury minutes do not constitute a legal impediment to the indictment. They are matters of defense. Since they might be relevant to a motion to dismiss in the interests of justice, a hearing will be held on that aspect of the motion on February 24, 1978 at 9:30 a.m.
Subject to the ruling after such a hearing, the motion to dismiss the indictment is denied.