The CAMELOT GROUP, LTD., f/k/a MBA Communications, Inc., Plaintiff,

v.

W. A. KRUEGER CO., Defendant,

and

Transamerican Enterprises, Inc., a/k/a Transamerican Enterprises Incorporated, Boryk Bros., Ltd., Alpha Assets, Ltd., Sidney Pal, Michael Bash, William O'Brien and The People of the State of New York, Additional Defendants on Cross-Claims.

78 Civ. 3442.

United States District Court,
S. D. New York.

March 12, 1980.

Ted M. Rosen, New York City, for defendant W. A. Krueger Co.

Shaw & Stedina, New York City, for additional defendants Sidney Pal and Michael Bash; Leon Baer Borstein, New York City, of counsel.

Brecher & Atlas, New York City, for additional defendant William O'Brien; Dan Brecher, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Defendant and cross-claimant, W. A. Krueger Co. ("Krueger"), seeks an order, pursuant to Fed.R.Civ.P. 37, overruling the claims by Sidney Pal and Michael Bash, additional defendants on Krueger's cross-claims (the "defendants"), of their Fifth Amendment privilege against self-incrimination asserted during the course of discovery proceedings, and directing them to answer questions propounded at their oral depositions, to answer interrogatories and to produce documents.

This action was commenced by the Camelot Group, formerly known as MBA Enterprises ("MBA") against Krueger. Krueger alleged counterclaims against MBA and cross-claims against six additional defendants—three corporations and three individuals including Pal and Bash. At present the only claims remaining in the case are Krueger's cross-claims against the individuals.[1] Three of these cross-claims allege that, in connection with Krueger's entering into an agreement extending an existing contract with MBA, Pal and Bash[2] made false representations to Krueger regarding the finances of Transamerican Enterprises (a guarantor of payments under the agreement); the intention of Transamerican Enterprises to infuse capital into MBA; and the fact that MBA was to be the publisher of certain magazines the printing of which was the subject of the agreement. Krueger alleges that these representations were knowingly made to deceive Krueger and to induce it to enter the agreement.

A fourth cross-claim alleges that Pal and Bash intentionally procured MBA's breach of both the extension agreement and of the original contract between Krueger and MBA. Finally, Krueger also alleges that MBA is the alter ego of Pal and Bash and seeks to hold them liable for the corporation's obligations to Krueger. In the instance of these latter claims there are no allegations of fraudulent conduct.

Oral depositions of Pal and Bash were noticed by Krueger for May 1979. On the return day each appeared and after being sworn asserted a "blanket" constitutional privilege with respect to any question that might be posed. The same position was taken with respect to interrogatories served by Krueger. This motion followed. At oral argument on June 19, 1979, the Court rejected the defendants' "blanket" assertions of the privilege against self-incrimination. It directed Pal and Bash to appear for their depositions and, if they intended to assert their privilege, to do so with respect to individual questions.[3] Each invoked his privilege and refused to answer each and every question put to him over the course of a 350-page transcript.[4]

▮ That the privilege against self-incrimination may be asserted in connection with civil litigation is beyond dispute.[5] However, Fifth Amendment claims are not to be accepted at face value. To do so would leave no check on assertions of the privilege where the risk of incrimination is remote or even non-existent, thereby obstructing the administration of justice.[6] Thus, a claimant of the privilege is not immunized from answering a question upon his mere declaration that it would tend to incriminate him—"his say-so does not of itself establish the hazard of incrimina-

1. In February 1979 the Court granted Krueger partial summary judgment against MBA and on several of its cross-claims against two of the additional corporate defendants. In November 1979 the Court dismissed the remainder of MBA's complaint and granted default judgments in favor of Krueger on its counterclaims and its cross-claims against the additional corporate defendants pursuant to Fed.R.Civ.P. 41(b) and 55(a).

2. The extension agreement was negotiated in connection with the purchase of MBA by Pal and Bash at about the same time.

3. See United States v. Melchor Moreno, 536 F.2d 1042, 1049 (5th Cir. 1976); United States v. Malnik, 489 F.2d 682 (5th Cir. 1974) (citing cases); United States v. Lustig, 16 F.R.D. 138 (S.D.N.Y.1954).

4. The questions posed at the depositions of each of the defendants were substantially the same. They ranged from inquiries into the defendants' marital status to details about the negotiation of the extension agreement and the accuracy of financial information given to Krueger. Because they were conducted prior to the dismissal of MBA's complaint and the default judgments, substantial portions of the depositions—probing the allegations of the complaint, the cross-claims and counterclaims—would now appear to be irrelevant to the issues remaining in the case.

5. Kastigar v. United States, 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972); United States v. Kordel, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970); Campbell v. Gerrans, 592 F.2d 1054, 1057 (9th Cir. 1979).

6. See United States v. Melchor Moreno, 536 F.2d 1042, 1046 (5th Cir. 1976).

tion." [7] The determination whether the privilege is well-founded is to be made by the court based upon all of the circumstances of the case and the judge, in assessing the claim, "must be governed as much by his personal perceptions of the peculiarities of the case as by the facts actually in evidence." [8] While the privilege is to be accorded liberal application, the court may order a witness to answer if it clearly appears he is mistaken as to the justification for the privilege or is advancing his claim as a subterfuge.[9] Moreover, the burden of establishing a foundation for the assertion of the privilege lies with the party making it.[10]

■ The standards to be applied in assessing a claim of privilege are well-established. The protection of the privilege is confined to instances where the witness has reasonable cause to apprehend danger from a direct answer; that is, reasonable cause to believe that a direct answer would support a conviction or furnish a link in the chain of evidence needed to prove a crime.[11] Further, the privilege against self-incrimination "protects against real dangers, not remote and speculative possibilities." [12] Thus the Court must be satisfied that given all the circumstances of the case, in connection with each area the questioning party wishes to explore, the claimant of the privilege is "confronted by substantial and 'real', and not merely trifling or imaginary, hazards of incrimination." [13]

## A. Bash's Claim of the Privilege.

■ To demonstrate that his assertion of the privilege is well-founded, Bash relies upon a year-old determination by a New York state court declining to grant him immunity in connection with discovery in a proceeding completely unrelated to this lawsuit.[14] The state court action was a special proceeding to enforce a judgment against Bash. Bash asserted his Fifth Amendment privilege and the plaintiff-judgment creditor sought an order, pursuant to New York law,[15] granting him immunity. As required by New York law, the consent of local prosecutors, state and federal, to the proposed grant was solicited. Each prosecutor opposed immunity and the court denied the motion. Each local county prosecutor declined to consent to the grant of immunity on general principles. The federal prosecutor stated, however, that Bash is "currently the subject of an investigation being conducted by the Criminal Di-

---

7. *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).

8. *Id.* at 486–87, 71 S.Ct. at 818; *Malloy v. Hogan*, 378 U.S. 1, 34, 84 S.Ct. 1489, 1507, 12 L.Ed.2d 653 (1964) (White, J., dissenting); *United States v. Melchor Moreno*, 536 F.2d 1046, 1047 (5th Cir. 1976); *Klein v. Smith*, 559 F.2d 189, 200 (2d Cir.), *cert. denied*, 434 U.S. 987, 98 S.Ct. 617, 54 L.Ed.2d 482 (1977).

9. *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951); *In re Brogna*, 589 F.2d 24, 27 (1st Cir. 1979); *Ryan v. C.I.R.*, 568 F.2d 531, 539 (7th Cir. 1977), *cert. denied*, 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978).

10. *See United States v. Melchor Moreno*, 536 F.2d 1042, 1049 (5th Cir. 1976); *United States v. Rosen*, 174 F.2d 187, 188 (2d Cir.), *cert. denied*, 338 U.S. 851, 70 S.Ct. 87, 94 L.Ed. 521 (1949); *United States v. Hoffman*, 185 F.2d 617, 621 (3d Cir. 1950), *rev'd on other grounds*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). *Cf. In re Bonanno*, 344 F.2d 830, 833 (2d Cir. 1965) (foundation for attorney-client privilege).

11. *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951); *Klein v. Smith*, 559 F.2d 189, 200 (2d Cir.), *cert. denied*, 434 U.S. 987, 98 S.Ct. 617, 54 L.Ed.2d 482 (1977).

12. *Zicarelli v. New Jersey Investigating Commission*, 406 U.S. 472, 478–9, 92 S.Ct. 1670, 1674–75, 32 L.Ed.2d 234 (1972).

13. *Marchetti v. United States*, 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968); *Rogers v. United States*, 340 U.S. 367, 374, 71 S.Ct. 438, 442, 95 L.Ed. 344 (1941); *United States v. Melchor Moreno*, 536 F.2d 1042, 1049 (5th Cir. 1976); *General Dynamics v. Selb*, 481 F.2d 1204, 1212 (8th Cir. 1973), *cert. denied*, 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974).

14. *Strickler's Inc. v. Stan Loman Enterprises, Inc.*, N.Y.L.J., February 28, 1979 at 12 (S.Ct.)

15. N.Y. C.P.L.R. § 5211 (McKinney's 1978); N.Y. C.P.L. § 50.20 (McKinney's 1971).

vision of this office." No suggestion as to the possible subject matter of that investigation is contained in the affidavit submitted by the federal prosecutor. There is neither indication nor contention that it relates even remotely to the subject matter of the civil claims asserted here or even that it is still ongoing. Moreover, although more than a year has passed since the federal prosecutor opposed the grant of immunity, Bash, in the latest submissions to this Court, has made no effort to update the information in the prosecutor's affidavit.

The information proffered above serves as no basis for sustaining Bash's assertion of the privilege in this action. That he has asserted his privilege in an unrelated lawsuit and that a court declined to grant him immunity in order to overcome that assertion are of no probative value on the issue of whether or not he has reasonable cause to apprehend danger of incrimination from questions posed in this suit where the inquiry is directed toward matters relevant to the subject matter involved in the defendant's cross-claims against him.

To find that reasonable apprehension exists based only upon this dated and uninformative data requires indulging in remote, purely speculative possibilities. Any link between the answers sought in this lawsuit and the alleged investigation which may or may not be pending, is entirely conjectural.

B. Pal's Claim of the Privilege.

Pal also relies upon materials submitted in a prior state court proceeding to support his assertion of the privilege. Significantly, the relevant information in these materials predates the original motion in this case but was not presented to this Court until December 1979 and no explanation for this delay has been offered.[16]

---

**16.** In the first set of motion papers, Pal's counsel stated in an affidavit only that, "[i]t is believed that PAL is also the subject of investigations by the District Attorney's office." This unsupported and uninformative statement of belief suffers even more markedly from the defects noted with respect to Bash's contentions and requires no further comment.

The state court proceeding upon which Pal relies was also a supplementary proceeding in the New York courts to enforce a judgment against him in which Pal successfully asserted his Fifth Amendment privilege. Pal's assertion of his privilege in the state court was initially sustained only in part by the trial court. Upon reargument further information was provided in the form of an affidavit by his counsel on the basis of which Pal's claim of privilege was ultimately sustained in full by the Appellate Division.[17] This same affidavit is now presented to this Court to sustain Pal's assertion of the privilege in this action.

The affidavit of Gustave H. Newman, sworn to April 26, 1979 and submitted to the State Court in the supplementary proceeding, avers that at that time the United States Attorney for the District of South Carolina was investigating and a federal grand jury was considering the bankruptcy of Cedric's Fish and Chips, Ltd., and its transactions with two companies, Transamerican Enterprises, Inc.[18] and Pollock Corporation; that Pal was an officer of both Transamerican and Pollock; and that Pal had asserted his Fifth Amendment privilege when called as a witness in bankruptcy proceedings in New York. The affidavit, in essence, argues that if Pal revealed any information as to his relationship with any of these corporations, he would be furnishing a link in the chain of evidence for a possible bankruptcy or mail fraud prosecution.

While the information supplied by the supplemental materials is not as barren of probative value as that initially urged on this Court, it is nevertheless insufficient to sustain the claim of privilege Pal makes here. In the first instance, as the availability of the privilege must be evaluated in the light of the peculiar circumstances of this

---

**17.** *First National City Bank v. Pal*, 421 N.Y. S.2d 889 (App.Div., 1st Dep't 1979).

**18.** Transamerican Enterprises, Inc. was an additional defendant on Krueger's cross-claims in this action. As noted above, *see* note 1, *supra*, default judgment was entered against it in November 1979.

case and with reference to the areas of inquiry here relevant, the fact that other courts have sustained Pal's assertions of privilege in completely unrelated proceedings is not germane to this Court's determination.

▮ Moreover, as with Bash's contentions, the information Pal relies upon is unusually sketchy and dated. In weighing its sufficiency as a foundation for Pal's assertion, it is noted that both the affidavit and the information it contains are almost a year old and, again, that no effort has been made to bring it up to date. There is no representation by Pal or his counsel that the information remains accurate. Thus the Court in fact has no indication that the investigations described in the affidavit are continuing, or whether they have terminated and with what result. Also to be taken into account is the fact that the affiant, Mr. Newman, in making his statements, was addressing another court, at another time and in the context of an entirely different litigation; that the nature and the subject matter of the questions propounded to Pal with respect to which he asserted his privilege are not submitted; and that neither Pal nor his present counsel has seen fit to reaffirm Mr. Newman's allegations in a current affidavit.

The averments of the Newman affidavit, even if accepted, do not provide a basis for Pal's assertion of the privilege in these proceedings. The bankruptcy of Cedric's Fish and Chips, the subject of the South Carolina investigation, though it may have involved Transamerican Enterprises, Inc. and other corporations of which Pal was an officer, is a matter wholly unrelated to the relatively narrow transaction—the agreement of MBA and its principals with Krueger—that is the subject of this lawsuit,[19] and upon which discovery here is focused. There is no showing that questions to be propounded relevant to Krueger's claims against Pal or Bash in any way relate to the issues in the Cedric's bankruptcy.

Further, the nub of Pal's claim of reasonable cause based on the Newman affidavit is that any revelation of his connection or dealings with Transamerican Enterprises, Inc. would somehow tend to incriminate him. Not only does this argument amount to the broadest of "blanket" assertions of the privilege but, in view of its singular lack of specificity and the remote linkages it is predicated upon, to sustain it would require this Court to engage in guesswork. In sum, considering all the circumstances of this action, this argument of Pal's does not demonstrate that a sufficient foundation exists for the privilege asserted.

In addition to the individual grounds discussed above, both Pal and Bash contend that their assertion of the privilege against self-incrimination with respect to all questions relevant to the cross-claims against them should be sustained because they are grounded on fraud and therefore they have reasonable cause to fear that answers to any relevant questions would tend to incriminate them in a possible criminal prosecution for fraud based upon the same transaction. However stated, they argue that the very nature of the civil action charging them with fraud, without more, provides an adequate basis for sustaining their broad assertion of privilege.[20]

19. Cf. *United States v. Anglada*, 524 F.2d 296, 300 (2d Cir. 1975) (no apparent connection between criminal charges pending used to justify assertion of privilege and incident on which testimony was sought); *United States v. Dichne*, 612 F.2d 632, 638 (2d Cir. 1979) (lack of direct linkage between required disclosure and potential criminal activity was a factor in assessing constitutionality of reporting requirements of Bank Secrecy Act under the Fifth Amendment).

20. In support of their position, the defendants rely upon the case of *London v. Patterson*, 463 F.2d 95 (9th Cir. 1972), *cert. denied*, 411 U.S. 906, 93 S.Ct. 1531, 36 L.Ed.2d 196 (1973), for the proposition that the defendant in a civil action for fraud has a reasonable apprehension of possible criminal prosecution which supports the assertion of the Fifth Amendment privilege as to discovery therein. *Patterson*, however, does not purport to state such a rule. That opinion affirmed a denial of habeas corpus relief to a petitioner whose claim was based on the use at his trial for forgery and grand theft of a deposition he gave as defendant in a civil action for fraud. In upholding the admission of the deposition, the court found

 Krueger urges that this argument be rejected because liability for civil fraud does not necessarily mean the defendant is guilty of the crime of fraud, as the elements of the civil and criminal claims are different.[21] This argument, however, applies too strict a standard. The basic question is whether relevant information sought from each defendant in the civil action would furnish a link in the chain of evidence needed to prove a crime.[22]

Here the possibility of incrimination is certainly less clear than would be the case, for instance, where the civil action is based upon a statute that also provides for criminal penalties (the federal antitrust or securities laws for example);[23] where the source of the civil cause of action is a criminal statute;[24] or where the witness is being questioned in a grand jury proceeding about his involvement in or knowledge of the allegedly criminal activities under investigation.[25] Nevertheless, it is possible that the same acts and conduct relied upon to sustain a civil fraud action—and which are the focus of discovery—could also form the basis for a criminal prosecution under, for example, the federal mail fraud statute,

18 U.S.C., section 1341, or for the crimes of larceny or fraudulently obtaining a signature under New York law.[26] Thus some hazard of incrimination as perceived by the defendants—while attenuated—does exist when a civil action sounds in fraud.

While as an abstract principle information relevant to this action might also provide an evidentiary link in a criminal prosecution for fraud, the possibility of prosecution here is the entirely conceptual one flowing solely from the fact that the civil cause of action, in addition to those essential elements required to sustain that claim, may have additional elements to support a criminal counterpart. Moreover, there is no indication that answers, however pertinent they might be with respect to the issues under the cross-claims, would be of any significance in the investigations referred to, even assuming they are still ongoing, which may be directed to matters entirely unrelated to those which arise out of the Krueger cross-claims.

 The absence, however, of a pending or likely prosecution does not rule out a finding that the privilege asserted is well-

that, inasmuch as the petitioner could have anticipated a criminal prosecution, it was not error to find a knowing waiver of any claim of privilege he may have had. The court was in no position to, and did not, address or pass upon the availability of the privilege in the civil action.

21. Under New York law which governs, five elements must be shown to sustain a civil cause of action for fraudulent misrepresentation: representation of a material existing fact; falsity; scienter (knowledge of falsity or recklessness); deception; and injury. See Jo Ann Homes at Bellmore, Inc. v. Dworetz, 25 N.Y.2d 112, 119, 302 N.Y.S.2d 799, 803, 250 N.E.2d 214, 217 (1969); Channel Mast. Corp. v. Aluminum Ltd. Sales, 4 N.Y.2d 403, 407, 176 N.Y.S.2d 259, 262, 151 N.E.2d 833, 835 (1958) (Fuld, J.); Deyo v. Hudson, 225 N.Y. 602, 612, 122 N.E. 635, 638 (1919); Cudemo v. Al and Lou Construction Co., 54 A.D.2d 995, 387 N.Y.S.2d 929 (3d Dep't 1976); Chase Manhattan Bank v. Perla, 65 A.D.2d 207, 411 N.Y.S.2d 66 (4th Dep't 1978).
Criminal prosecutions for larceny or for fraudulently obtaining a signature require proof of criminal intent to defraud. See People v. Ryan, 41 N.Y.2d 634, 638–40, 394 N.Y.S.2d 609, 611–13, 363 N.E.2d 334, 336–337 (1977); People v.

Powell, 22 A.D.2d 959, 256 N.Y.S.2d 117 (2d Dep't 1964) (citing cases); People v. Rosenstein, 92 Misc.2d 1069, 402 N.Y.S.2d 151 (1978) (citing cases). Similarly, an essential element of the federal crime of mail fraud, 18 U.S.C. § 1341, is a specific criminal intent to defraud. See United States v. Bush, 522 F.2d 641, 648 (7th Cir. 1975), cert. denied, 424 U.S. 977, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976); United States v. Regent Office Supply Co., 421 F.2d 1174, 1182 (2d Cir. 1970); United States v. Koenig, 388 F.Supp. 670, 722 (S.D.N.Y.1974).

22. See note 11, supra.

23. Cf. In re Folding Carton Antitrust Litigation ("Folding Carton"), 609 F.2d 867 (7th Cir. 1979).

24. Cf. LeBlanc v. Spector, 378 F.Supp. 310, 313 (D.Conn.1974).

25. Cf. United States v. Miranti, 253 F.2d 135 (2d Cir. 1958); In re Brogna, 589 F.2d 24 (1st Cir. 1978).

26. See N.Y. Penal Law §§ 155.05 and 165.20 (McKinney's 1975).

founded. To the contrary, the right to assert the Fifth Amendment privilege depends not upon the *likelihood* but upon the *possibility* of prosecution.[27] Nevertheless, even eschewing a "likelihood of prosecution" standard, a witness asserting his privilege must still have reasonable cause to apprehend a danger of prosecution[28] and where a prosecution is no more than a "mere imaginary possibility,"[29] remote, unsupported and improbable, the claimed privilege may not be sustained. In fact, *In re Folding Carton Litigation,*[30] the most recent opinion to reject a likelihood of prosecution standard, pointed out that a reasonable fear of prosecution is not made out where a witness fails to demonstrate "any possibility of prosecution which is more than fanciful." Here the hazard of incrimination urged by the defendants is not only unrealistic but the only prospect of prosecution rises from the fact that the fraud claims have imperfect analogs in the criminal law.

Considering these factors in the context of this case, the Court, familiar with the nature of the civil action, the issues involved, and the proceedings thus far had, finds that Pal and Bash's apprehension of prosecution for fraud flowing from answers to questions relevant to the fraud cross-claims is so speculative as to properly be deemed "fanciful"; that neither defendant has reasonable cause to assert his Fifth Amendment privilege here simply because some claims allege civil fraud.[31] The claims of privilege against self-incrimination are overruled and the defendants are directed to answer the questions propounded by Krueger.[32]

While they do not dictate the Court's disposition, sound considerations of policy caution against the opposite conclusion which would, in effect, create a rule making the mere fact that a civil suit alleged fraud a sufficient foundation, without any further showing, for the assertion of the Fifth Amendment privilege with respect to the discovery of any matters relevant to the subject matter of the asserted claims. Such a rule would seriously handicap, if not completely frustrate, the pretrial discovery process. Every defendant would automatically have the ability to claim the privilege and immunize himself from discovery with respect to asserted claims against him. Moreover, the impact of such a rule could not be confined to civil fraud actions but would extend to any action with some type of criminal counterpart.

Krueger has pressed the alternative contention that the defendants waived any privilege they might properly have asserted by submitting affirmations and affidavits at an earlier stage in this action in opposition to a motion for summary judgment by Krueger and in support of a cross-motion

**27.** *See United States v. Miranti,* 253 F.2d 135, 139 (2d Cir. 1957); *Folding Carton,* 609 F.2d 867, 872 (7th Cir. 1979); *In re Master Key Litigation,* 507 F.2d 292, 293 (9th Cir. 1974); *United States v. Johnson,* 488 F.2d 1206, 1209 n.2 (1st Cir. 1972); *United States v. Seavers,* 472 F.2d 607, 610–11 (6th Cir. 1972). *Cf.* 8 Wright & Miller, Federal Practice and Procedure, § 2018, at 141 (privilege available even where risk of prosecution is remote); *Priebe v. World Ventures, Inc.,* 407 F.Supp. 1244 (C.D. Cal.1976).

**28.** *United States v. Seewald,* 450 F.2d 1159, 1163 (2d Cir. 1971), *cert. denied,* 405 U.S. 978, 92 S.Ct. 1206, 31 L.Ed.2d 253 (1972).

**29.** *United States v. Goodman,* 289 F.2d 256, 259–62 (4th Cir. 1961), *vacated on other grounds,* 368 U.S. 14, 82 S.Ct. 127, 7 L.Ed.2d 75 (1962); *United States v. Seewald,* 450 F.2d 1159, 1163 (2d Cir. 1971), *cert. denied,* 405 U.S. 978, 92 S.Ct. 1206, 31 L.Ed.2d 253 (1972) (no

realistic possibility of further prosecution); *LeBlanc v. Spector,* 378 F.Supp. 310, 315 (D.Conn.1974); *Ionian Shipping Co. v. British Law Ins. Co.,* 314 F.Supp. 1121, 1125 (S.D.N.Y. 1970).

**30.** 609 F.2d 867, 871 (7th Cir. 1979).

**31.** Even if the fraud claims did create a foundation for the privilege in and of themselves, this foundation would not sustain the comprehensive "blanket" refusal to respond to all relevant discovery in this action since non-fraud cross-claims have been asserted and remain in the case.

**32.** Any claim that a question is beyond the scope of Rule 26 as not relevant to the subject matter of the counterclaims or for any reason authorized under the Rules may be presented to the Magistrate for determination by him.

for summary judgment by MBA. These affidavits were addressed to factual issues in this lawsuit and proved sufficient to defeat Krueger's motion in part.

■ A witness or a defendant in a civil case who has already testified to matters which tend to incriminate him has waived the privilege insofar as further questions seek the details of the matters as to which he did testify.[33] Thus, while a complete waiver as to all discovery cannot be founded on Pal and Bash's affidavits, by revealing the information in those affidavits, they have waived their privilege to the extent that Krueger seeks discovery with respect to details of the factual matters disclosed therein. However, in light of the Court's finding that no sufficient foundation has been demonstrated for the assertion of the privilege by either Pal or Bash, it is not necessary to pass upon the precise scope of this waiver.

In accordance with the foregoing, Krueger's motion is granted.

So ordered.

---

**33.** *See Rogers v. United States*, 340 U.S. 367, 374, 71 S.Ct. 438, 442, 95 L.Ed. 344 (1951); *United States v. LaRiche*, 549 F.2d 1088, 1096 (6th Cir.), *cert. denied*, 430 U.S. 987, 97 S.Ct. 1687, 52 L.Ed.2d 383 (1977).