OPINION OF THE COURT
Donald J. Mark, J.
This is an application by the defendant, who has been convicted after a jury trial of the crimes of grand larceny in the third degree, offering a false instrument for filing in the first degree and second degree, misuse of food stamps and welfare fraud, pursuant to CPL 330.30 (1), to vacate the jury’s verdict of guilty on the grand larceny charge, upon the ground that the court’s response to a question of the deliberating jury *269 was erroneous and would require a reversal of the conviction as a matter of law by an appellate court.
The People adduced proof at trial that the defendant was a recipient of public assistance from the Department of Social Services (hereinafter referred to as DSS) under the Aid to Dependent Children Program (hereinafter referred to as ADC); that she commenced employment on July 17, 1992, but on November 30, 1992, and again on March 24, 1993, she completed a DSS form in which she denied she was employed; that on August 18, 1993, DSS learned from the defendant’s employer that the defendant was employed, and as a result her public assistance was discontinued on September 30, 1993; and that DSS had paid the defendant $16,674 in benefits to which she was not entitled.
The defendant adduced proof at the trial that on September 29, 1992, she orally inquired of a DSS senior examiner as to her eligibility for benefits under the Children’s Assistance Program (hereinafter referred to as CAP), and she admitted at that time that she was employed;[1] that after DSS terminated her ADC benefits because of her employment, she applied for and was awarded CAP benefits on October 5, 1993; and that under the CAP Program she received benefits slightly in excess of ADC benefits while being permitted to receive wages from the same employment.
The primary argument of the defense on summation was to the effect that even though the defendant had denied she was employed on the two forms she submitted to DSS at the time it was paying her ADC benefits, as the defendant was actually eligible for increased benefits, although working, through the CAP Program, no larceny was committed. The defense cited People v Hunter (34 NY2d 432) in support of this theory. The prosecutor did not object to this portion of the summation, but under the circumstances his inaction was excused.[2]
*270 The prosecution in its summation conceded that the defendant ultimately had been permitted to work and collect increased benefits under the CAP Program, but that during the time she was covered by the ADC Program, she had collected benefits to which she was not entitled. The prosecution argued that under this theory, the defendant had committed larceny as charged and the jury should reject the defense of "retroactive” CAP Program coverage.[3]
During the course of its deliberations the jury requested an instruction as to whether it could consider the fact that the defendant was ultimately found eligible for the CAP Program in determining if she had illegally received benefits from the ADC Program. Despite the summations of the defendant, the response of this court to this question of the jury was in the negative.[4]
The seminal case in this area is People v Hunter (supra), which while not exactly on point, is closely analogous to this factual predicate. There, the defendant was charged with the crime of grand larceny in the third degree, because he did not report his income from employment during the period he was receiving public assistance. The defendant’s conviction on that charge was reversed, since "To show that defendant’s silence with regard to employment income was material * * * proof should have been introduced to show the amount of [public] assistance, if any, Hunter would have been entitled to receive had he reported in full his employment income” (at 439), and such proof was lacking.[5]
However, while the concept espoused by the Court of Appeals in that decision is clear, there is language which appears to favor the defendant on her claim of "retroactive” eligibility *271 negativing her alleged fraud, i.e., "for public assistance to be obtained 'wrongfully’ it must be shown that the defendant is not entitled to it in any event. The defendant’s misrepresentation must be material, and 'material’ in the context of public assistance means that the defendant would have been entitled to less assistance had the true facts been known” (People v Hunter, supra, at 438 [emphasis added].)
The defense argues that the "true facts” are that the defendant could simultaneously work and receive benefits under the CAP Program;[6] the prosecution responds that the "true facts” are that the defendant’s deception deprived her to entitlement of benefits under the ADC Program.
There are two cases, which, while not exactly on point, again, are closely analogous to the instant case, and since their reasoning parallels that of People v Hunter (supra), they are helpful in resolving this dilemma.
In People v Johnson (76 AD2d 983), the defendant was indicted for grand larceny and falsely obtaining public assistance. The allegation was that while the defendant was receiving public assistance, her landlord was residing with her in her apartment, but on four recertification applications she denied sharing a housing arrangement. The landlord testified that although he resided with the defendant, he continued to receive rent payments from her. The defendant was convicted of petit larceny, not because of her four false statements, but because she had overstated the amount of rent she was paying. The issue, according to the appellate court, was whether the rent was in fact paid by the defendant to the landlord, thus implicitly holding that a defendant’s misrepresentation must result in the overpayment of benefits to the recipient in order for the crime of grand larceny to be committed.
People v Bellamy (92 Misc 2d 211) was another case where the defendant was charged with grand larceny and falsely obtaining public assistance. The defendant was receiving ADC benefits, but while she had litigation pending as a result of an automobile accident, she filed periodic applications for recertification in which she denied the existence of such litigation. The result was that the welfare agency was deprived of the opportunity to perfect its lien against the settlement she ultimately received, and the prosecution claimed that the loss *272 of the lien by reason of the false representations supported the charges against her. The court concluded that although the welfare agency was deprived of a benefit, the defendant was nevertheless entitled to public assistance while the litigation was pending, so the crime of larceny by false pretenses was not committed.
The common thread in these two decisions is that the recipient of public assistance will not be guilty of grand larceny by false pretenses, even if he/she makes a false representation of fact to DSS which ordinarily would make him/her ineligible for benefits, where the recipient would in fact be entitled to those payments irrespective of the misrepresentation.[7]
Therefore, the proper conclusion is that the "true facts” in this case are that under the CAP Program the defendant would be permitted to receive income from employment and entitled to receive benefits from DSS at the same time, and as a result she did not commit the crime of grand larceny via conduct constituting false pretenses.
Accordingly, the application of the defendant to vacate her conviction for the crime of grand larceny in the third degree is granted.

. This evidence necessitated an instruction to the jury as to the method it should use to calculate "value” as to the elements of the lesser included offense of grand larceny in the fourth degree.

. The parties to litigation may adopt their own rules at trial by the simple expedient of failing to object (People v Mezon, 80 NY2d 155, 160). Here,-the prosecution failed to object to this aspect of the defendant’s summation, so under normal conditions this would constitute a waiver (see, People v Scotti, 220 AD2d 543, lv denied 87 NY2d 907). However, in an off-the-record discussion, this court indicated, over the prosecutor’s objection, that it would permit such a summation in light of the equivocal language of People v Hunter (34 NY2d 432, supra), discussed infra. Because of this *270 advance ruling, the prosecution was relieved of its obligation to repeat a pointless protest (see, People v Mezon, supra, at 160-161).

. This is the court’s characterization of the prosecution’s argument.

. The jury quite accurately focused on this question of law, and it was answered obviously in a manner inconsistent with the summation by the defense. Again, in view of the equivocal language of People v Hunter (supra) and cognizant that the prosecution should be entitled to any reasonable doubt that a trial court may have upon the law (People v Reed, 276 NY 5, 9), this procedure was adopted to give the prosecution a possible opportunity to appeal (see, People v Key, 45 NY2d 111, 120). The prosecution could appeal from an order setting aside the verdict (CPL 450.20 [3]), and the defense could appeal from a conviction (CPL 450.10 [1]), so the appellate rights of both sides were preserved in this manner.

. In this case there was no such failure of proof, as a DSS supervisor testified that the defendant’s ADC benefits would be decreased by $1 for every dollar the defendant earned as wages.

. In fact, the defense based its motion for a trial order of dismissal upon the ground that the prosecution failed to demonstrate on its direct case that the defendant was not entitled to benefits under the CAP Program; this motion was properly denied (see, People v Green, 36 Misc 2d 888).

. Although not a welfare fraud case, People v Henning (42 AD2d 286) is basically in accord with this principle.