344 F.2d 830
 In re Salvatore BONANNO, Appellant, and Proceedings Before
October 1964 Additional Grand Jury.
No. 454, Docket 29583.
 United States Court of Appeals Second Circuit.
 Argued April 1, 1965.
Decided April 30, 1965.
 
 Albert J. Krieger, New York City (Robert Kasanof, New York City, on the brief), for appellant.
 Otto G. Obermaier, Asst. U.S. Atty., New York City (Robert M. Morgenthau, U.S. Atty., for Southern District of New York, John S. Martin, Jr., Asst. U.S. Atty., on the brief), for United States.
 Before LUMBARD, Chief Judge, and SWAN and KAUFMAN, Circuit Judges.
 KAUFMAN, Circuit Judge:
 
 
 1
 Contending that a privileged relationship justified his refusal to answer certain questions in the course of a grand jury inquiry and that the special proceedings rejecting the claim of privilege did not comport with due process requirements, Salvatore Bonanno appeals from a judgment of commitment for civil contempt. The contumacious conduct occurred when, despite the District Court's ruling that answers to the questions would not require disclosure of confidential attorney-client communications, Bonanno persisted in invoking the privilege both before the grand jury and the judge, despite his direction to answer the questions. Bonanno is presently committed to custody until he purges himself of contempt by answering the questions. We affirm, finding neither procedural nor substantive error in the District Court's determination that Bonanno failed to meet the burden of establishing the essential predicate to invocation of the privilege-- existence of an attorney-client relationship.
 
 
 2
 On January 5, 1965, having been served with a material witness warrant in Tucson, Arizona, Bonanno appeared before the October 1964 Additional Grand Jury, sitting in the Southern District of New York, to testify concerning the sudden and dramatic disappearance of his father, Joseph Bonanno, during the grand jury's investigation. After he was granted immunity from prosecution, 47 U.S.C. 409(l), thus effectively removing the cloak of the privilege against self-incrimination, Bonanno, on January 14, declined to answer two questions concerning telephone conversations between himself and William Power Maloney which took place on December 18 and 19, 1964. He claimed that Maloney, who concededly was his father's attorney, was his own counsel as well; if accepted, this claim would have insulated the allegedly confidential communications from grand jury scrutiny.
 
 
 3
 Following our direction in United States v. Kovel, 296 F.2d 918, 96 A.L.R.2d 918 (2 Cir. 1961), that proper practice in such instances requires a preliminary judicial inquiry, with the grand jury excused, into the existence of the privilege, a full hearing was held before Judge Tenney. The testimony, which we shall detail below, focused on the threshold but crucial question of the alleged attorney-client relationship between Maloney and Salvatore Bonanno. It was unnecessary to reach the further question whether the particular telephone conversations were themselves privileged communications between attorney and client because Judge Tenney, after giving 'careful consideration' to the testimony before him, ruled that Bonanno had not 'met or even approached' the burden of presenting evidence to support his claim that Maloney was his lawyer. Bonanno then was directed to answer the questions, but refused to do so when they were, once again, propounded before the Grand Jury and also after direction by the Judge in open court. His adjudication for civil contempt followed.
 
 
 4
 So that our assessment of the validity of that judgment may be understood, we have briefly summarized the testimony presented to Judge Tenney, which he characterized as 'so filled with contradictions, improbabilities, and inconsistencies, as to render it unworthy of belief.' The hearing before the Judge opened with Bonanno testifying that the attorney-client relationship arose when he and his father Joseph met with Maloney on an unspecified date in August 1964, after Joseph had returned to New York from Canada. He said he presented his own legal and tax problems to Maloney, feeling that they were closely related to similar problems of his father.
 
 
 5
 On cross-examination, Bonanno was confronted with his grand jury testimony, given just two weeks earlier, in which he denied ever having retained Maloney or any other attorney in New York, with the exception of his present counsel, retained in connection with the grand jury proceeding. Seeking to account for this glaring inconsistency, Bonanno explained that the earlier answers were limited to the specific grand jury proceedings in which he was then a witness, notwithstanding the fact that he had told the grand jury, 'I know a few attorneys in New York, and I'm just trying to figure out if they've ever represented me in any matter.'
 
 
 6
 Maloney also was a witness at the preliminary hearing. On direct examination, he said that in August 1964 Salvatore and Joseph Bonanno conferred with him and that Salvatore sought his advice as an attorney. But he, too, was unable to pinpoint either the date he was retained or corroborative details of the alleged retainer. And, although Salvatore testified that in August he paid Maloney a fee in cash, Maloney stated that the only sum he received was a payment of less than $500 for expenses in September, which he did not note in any office income or disbursement record.
 
 
 7
 The Government, on cross-examination, then confronted Maloney with his prior testimony before the grand jury in which he stated that he had been retained by Salvatore Bonanno during a telephone conversation on December 18, 1964. This testimony was not only inconsistent with the claim made by both parties in the hearing before Judge Tenney that their confidential relationship arose in August, but also contrary to Bonanno's denial that he discussed Maloney's representation during the December telephone conversation.
 
 
 8
 After the preliminary hearing had been closed, Bonanno alleged that he had acquired additional evidence to substantiate the claimed attorney-client relationship. Judge Tenney, in an effort to throw as much light as possible on the subject which up to this point consisted of a bundle of contradictions, granted the appellant's motion to reopen the hearing, over the Government's objection, and proceeded to take more testimony. This alleged 'new evidence' consisted of a petition to the Tax Court which Bonanno claimed had been prepared in Maloney's office on August 10, 1964, the last day for answering a 90-day deficiency letter from the Internal Revenue Service. Maloney's secretary, Aileen Richmond, identified a photocopy of an incompletely executed copy of the original petition, which she testified was dictated jointly by Maloney and Lawrence P. D'Antonio, Salvatore Bonanno's Arizona counsel. Although she previously had told the grand jury she never overheard any conversations between Maloney and Bonanno, Mrs. Richmond now distinctly remembered that both men discussed the tax petition. But she was unable to produce any corroborative stenographic notes which recorded the alleged dictation taken from Maloney and D'Antonio.
 
 
 9
 The general tenor of Mrs. Richmond's testimony was echoed by both Bonanno and Maloney at this reopened hearing although, significantly, D'Antonio was never called by appellant to testify. On cross-examination, Maloney admitted that he had never consulted Bonnano in connection with tax matters before August 10, that this was the first and only occasion on which he participated in the preparation of any tax documents for Bonanno, that he could not recall ever representing any client at any time in the Tax Court, and, indeed, was not admitted to practice before that Court. Bonanno also admitted that the only time he sought tax advice from Maloney was on August 10 although other counsel had represented him at various conferences with the Internal Revenue Service concerning these tax deficiencies, and that he personally, rather than a member of Maloney's staff, registered the mailing of the petition and obtained the money order necessary to cover the filing fee.
 
 I.
 
 10
 This brief review of the vague, confusing and what would appear to be contrived testimony before Judge Tenney, based on our independent reading of the record of the hearings, would alone furnish ample support for the conclusion that no attorney-client relationship ever existed between Salvatore Bonanno and Maloney. When coupled with the deference due by an appellate court to the evaluation of credibility and demeanor by the trier of facts, United States v. Tutino, 269 F.2d 488 (2 Cir. 1959), there is no basis whatever for upsetting the District Court's proper determination based upon a painstaking hearing.
 
 
 11
 We recognize that an attorney-client relationship arises when legal advice of any kind is sought from a professional legal adviser in his capacity as such. 8 Wigmore, Evidence (McNaughton Rev. 1961), 2292. Bonanno concedes, as he must, United States v. Kovel, 296 F.2d 918 (2 Cir. 1961), that the burden of establishing the existence of the relationship rests on the claimant of the privilege against disclosure. That burden is not, of course, discharged by mere conclusory or ipse dixit assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed.
 
 
 12
 It is clear to us that the evidence presented to Judge Tenney consisted of little more than bare characterizations, both Bonanno and Maloney being unable, despite the passage of only five months, to recall the details-- much less to furnish tangible evidence-- of the events surrounding formation of the alleged relationship. The record is a veritable catalogue of inconsistencies concerning the date when Maloney was retained, whether that occurred in his office, at a restaurant, or over the telephone, and whether he was paid a fee in August or reimbursed for expenses in September. Moreover, we are not aware that Bonanno himself ever satisfactorily explained his testimony before the Grand Jury denying that he had ever retained Maloney 'in connection with these proceedings or any other proceedings.' And, as Judge Tenney noted, 'whatever association Maloney had with (Bananno) in August of 1964, it was not that of an attorney and client but merely an accommodation to (Bonanno's) lawyer, Mr. D'Antonio, in making Maloney's office and secretary available at the last moment for the purpose of preparing and mailing income tax papers.' We see no basis, therefore, for upsetting or even questioning the conclusion, carefully arrived at by the Judge, that an attorney-client relationship 'never existed.'
 
 II.
 
 13
 Bonanno further contends, however, that in reaching his determination Judge Tenney improperly considered and relied upon his personal knowledge and recollection and the Assistant United States Attorney's statements concerning matters which transpired before the grand jury rather than on the evidence adduced at the special hearing. He objects, also, to the Court's refusal to permit his counsel to inspect Maloney's prior grand jury testimony and to the Government attorney's reference, in argument at the close of the initial hearing, to incidents not covered by the testimony.
 
 
 14
 Addressing ourselves to the Court's refusal to permit inspection, it appears that when Maloney was confronted with prior inconsistent statements in his grand jury testimony, Bonanno's counsel asked to see the relevant portions of the stenographic minutes to insure that the questions were not read out of context. Judge Tenney replied that he would examine the transcript for this purpose, a procedure with which both sides initially expressed satisfaction. But soon thereafter, Bonanno's counsel requested permission to inspect Maloney's entire grand jury testimony.
 
 
 15
 In refusing to disclose the minutes, the District Court did not abuse its discretion. Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959); United States v. Consolidated Laundries Corp., 291 F.2d 563, 574 (2 Cir. 1961). Here, unlike United States v. Stone, 282 F.2d 547 (2 Cir.), cert. denied, 364 U.S. 928, 81 S.Ct. 353, 5 L.Ed.2d 266 (1960), the grand jury investigation was still in progress and Bonanno was not seeking his own grand jury testimony but another's. His rights were adequately protected by the measures taken to insure that Maloney's prior testimony was not lifted from its proper frame of reference and that the full context of a series of questions was read into the record.
 
 
 16
 Moreover, we have not been referred to a single case authorizing disclosure of a witness' testimony during the pendency of grand jury investigations, traditionally surrounded with a shroud of secrecy that should be removed 'discretely and limitedly.' United States v. Procter & Gamble,356 U.S. 677, 683, 7 S.Ct. 983, 2 L.Ed.2d 1077 (1958). As we said recently, 'Only when justice requires it or when the advantages gained by secrecy are clearly outweighed by a countervailing interest in disclosure, e.g., when there is a particularized need for the minutes, should the veil be lifted.' United States v. Marchisio, 344 F.2d 653, (2 Cir. April 9, 1965). The District Court acted well within the bounds of its discretion in refusing to apply those carefully limited exceptions to this case, where secrecy was necessary in an ongoing probe 'so that others under investigation and other prospective witnesses might not be warned of what had been asked and answered and so aided in thwarting the inquiry.' United States v. Tramunti, 343 F.2d 548, (2 Cir. April 5, 1965). Furthermore, our own inspection of the complete minutes of Maloney's grand jury testimony reveals that all portions in any way relevant to his alleged representation of Salvatore Bonanno were included in the record before Judge Tenney.
 
 
 17
 Finally, we find no merit in the claim that Judge Tenney improperly relied on extra-record evidence,[1] particularly the Government prosecutor's remarks, in closing argument, alluding to certain incidents during the course of the grand jury investigation which apparently were referred to in Maloney's grand jury testimony but to which there was no reference at the hearing. We do not, of course, condone the Assistant United States Attorney's over-eagerness, which was 'more in the spirit of a ride to hounds than a fair-minded pursuit of the truth,' United States v. Glaze, 313 F.2d 757, 761 (2 Cir. 1963), according to well-established rules.
 
 
 18
 But while some expression of disapproval of the conduct is fitting, a finding of reversible error most definitely is not, and, indeed, would be inappropriate here. First, the Government offered to remedy whatever wrong might have been committed, expressing its willingness to recall Maloney, if Bonanno so desired, to introduce additional portions of his grand jury testimony. When the hearing was reopened, however, and Maloney was recalled to the stand by Bonanno, his counsel never responded to the Government's invitation, even though it would have given him the opportunity to fulfill substantially his already expressed desire to learn the full contents of Maloney's prior testimony. In any event, in reviewing proceedings before a judge alone, appellate courts may presume that improper evidence and comments have been rejected, at least absent a showing of substantial prejudice. See United States v. Cimino, 321 F.2d 509, 511-512 (2 Cir. 1963); cert. denied, 375 U.S. 967, 974, 84 S.Ct. 491, 11 L.Ed.2d 418 (1964); Teate v. United States, 297 F.2d 120, 121-122 (5 Cir. 1961). Here, indeed, Judge Tenney carefully heeded Bonanno's counsel's numerous requests that he adhere to the record, making it clear in his ultimate ruling that his determination was based solely on the evidence properly admitted at the hearing.
 
 
 19
 Affirmed.
 
 
 
 [1]
 In re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955), on which Bonanno relies, is completely inapposite. There the Court held that where allegedly contumacious conduct occurs before a judge sitting as a 'one-man grand jury,' due process requires that another judge try the issue of contempt. Judge Tenney did not sit as a 'one-man grand jury.' He was simply called upon to conduct a preliminary hearing in order to determine whether Bonanno's claim of privilege was valid