**UNITED STATES of America,**
**Appellee,**

v.

**Carlos SANCHEZ, a/k/a Loquito, t/n**
**Rapael Moya, Appellant.**

**No. 487, Docket 29202.**

United States Court of Appeals
Second Circuit.

Argued May 18, 1965.

Decided July 26, 1965.

Stephen W. Stein, New York City (Anthony F. Marra, New York City, on the brief), for appellant.

John S. Martin, Jr., Asst. U. S. Atty., Southern Dist. of New York (Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, on the brief), for appellee.

Before WATERMAN, MARSHALL and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge.

According to the Government, on the night of October 31, 1963 Leo Thomas, an undercover agent of the Federal Narcotics Bureau, in the company of another agent, one Biase, was introduced by an informant to the appellant, Sanchez, in the Chesterfield Bar on upper Broadway. Thomas told Sanchez that he wanted to purchase some cocaine, to which Sanchez replied that he did not have any at that time but that he could probably get some at a later date. However, when Sanchez made an estimate of what the price would be, Thomas asked if he could buy some marijuana. After some dickering over the price, the appellant agreed to sell Thomas a pound of marijuana for $140. The same parties met later that night at the corner of 140th Street and Broadway, and Thomas paid the agreed sum to Sanchez and the appellant delivered the pound of marijuana to the agent, Thomas.

The indictment in the instant case was returned on February 17, 1964. On February 26, Agent Thomas saw Sanchez uptown, and asked if appellant could get him any more "pot." Sanchez replied that he could not be of any help, as he had lost his connection. He was then placed under arrest.

Shortly thereafter, appellant was brought to the United States Courthouse at Foley Square where he was questioned by an Assistant United States Attorney. Thomas served as interpreter for Sanchez, who does not speak or understand English and who was not represented by counsel at this interrogation where he made several damaging admissions.

The prosecution's case at the trial was based on the testimony of the two agents. Sanchez testified in his own behalf and denied participating in the acts to which the agents had testified. He claimed that he had never seen Thomas before the night of the arrest and denied ever having participated in any narcotics transaction. On direct examination he testified in part as follows:

"Q. Now, I want you in your own words to tell me, if you ever saw Agent Thomas on or about October 31, 1963? A. I never saw him before. I only saw him when he caught me.

Q. And when did he arrest you? A. February 25th. I don't remember."

On cross-examination by Assistant U. S. Attorney Samuels, the following colloquy took place:

"Q. Did you ever see Agent Thomas [in the Chesterfield Bar]? A. I never saw Agent Thomas.

Q. Do you recall being asked certain questions and giving certain answers to me when you were brought over here after you were arrested? A. Yes I answer.

Q. Do you recall this question and this answer?

Mr. Krieger: If your Honor please, with respect to the question and answer I will insist upon a voir dire as to the facts and circumstances surrounding that particular incident of law enforcement.

Mr. Samuels: Your Honor, I think that the government is not offering it in evidence. I am just asking whether he recalls a question and whether he recalls an answer. Now, I think that he can answer yes or no, either he recalls it or he doesn't recall it, and I don't think for this purpose that a voir dire is necessary. I don't think there is any case that so holds.

The Court: I will take it just the same. I will permit it.

Q. Do you recall being asked certain questions and this answer:

'Q. Where did you see Agent Thomas before? A. I saw him at 136th, 137th and Broadway.'

A. No, sir, I didn't say that. I told you I never saw him before and if I saw him I don't know, because I never spoke to him.

Q. And do you recall after—well do you recall this question:

'Quando' [sic]—that is the question it was asked in Spanish, when—'Quando' [sic] and your answer 'Two months ago'?

A. I say when they caught me."

Appellant seeks to set aside his conviction on the ground that he was prejudiced by the reading into the record of the inculpatory statements made by him while he was without the benefit of the guiding hand of counsel after he had been indicted and arrested. Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); Fahy v. State of Connecticut, 375 U.S. 85, 86–87, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). For purposes of this appeal, the Government concedes that the interrogation at which the statements were obtained was in derogation of appellant's right to counsel.

In United States v. Guerra, 334 F.2d 138, 145 (2d Cir.), cert. denied 379 U.S. 936, 85 S.Ct. 337, 13 L.Ed.2d 346 (1964), this court construed Massiah to hold that the reversal is required under these circumstances only where the illegally obtained statements have been put to an "incriminating use" against the defendant. There can be no doubt that an admission by Sanchez that he had seen Thomas prior to the arrest in the vicinity where the crime was alleged to have taken place would be highly incriminating. It would flatly contradict the key prop to appellant's defense of mistaken identity, namely his testimonial assertion that he had never seen the agent, to whom he stood accused of selling marijuana, prior to the night of the arrest. The question presented, therefore, is whether the statements were "used" against Sanchez so as to require reversal of his conviction.

As Sanchez had testified on direct examination that he never saw Thomas before the night of the arrest, the Government attempted to attack his credibility by showing that on a prior occasion he had made statements inconsistent with that testimony. The Supreme Court has stated that there must be limits on the use of unconstitutionally obtained evidence for purposes of impeachment. Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954); and see Tate v. United States, 109 U.S.App. D.C. 13, 283 F.2d 377, 382 (1960) (Con-

currence). We need not, however, decide whether those limits have been reached in this case, for we feel that no evidentiary use was made of the illegally obtained admission. Cf. Johnson v. United States, 344 F.2d 163 (D.C.Cir. 1964).

Over objection, the trial court permitted the prosecution to inquire whether Sanchez recalled being asked certain questions and giving certain answers when he was interrogated at the Courthouse following his arrest. Those questions and answers were read into the record. Sanchez flatly denied making any such statements and asserted he had then said exactly the same thing he testified to on direct examination. The prosecution thereupon dropped the matter and made no effort to prove the making of the alleged statement. Consequently the record contained no evidence which contradicted Sanchez's statement on direct examination. The attempted impeachment was thus abortive. See McCormick, Evidence § 37 at 68 (1954). In the face of Sanchez's denial, it cannot be presumed that the able trial judge treated the prosecution's foundation question as proof of the matter contained therein. We are confident of the ability of a trial judge to distinguish questions from evidence and, absent a contrary indication from the record, we are satisfied that the incident in no way contributed to the judgment of conviction. See United States v. Reeves, 348 F.2d 469 (2d Cir. June 28, 1965); In re Bonanno, 344 F.2d 830 (2d Cir. April 30, 1965); United States v. Cimino, 321 F.2d 509, 511–512 (2d Cir. 1963), cert. denied, D'Ercole v. United States, 375 U.S. 967, 974, 84 S. Ct. 486, 11 L.Ed.2d 416 (1964); Teate v. United States, 297 F.2d 120, 121–122 (5th Cir. 1961).

It is most unlikely, however, that we would take the same position if this case were tried before a jury or if we believed the attempt at impeachment was purposefully truncated, solely devised as a means of having the purported admissions, imbedded in the loaded questions, reach the trier-of-fact. Cf. United States v. Robbins, 340 F.2d 684, 689 (2d Cir. 1965).

Affirmed.